[Criminal No. 535. Filed June 28, 1922.]

[207 Pac. 986.]

## ANNA IRENE HOPKINS, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—INSTRUCTIONS SHOULD BE FOLLOWED BY THE JURY. The instructions are the law of the case and should be followed by the jury, and the failure to do so is reversible error.

2. CRIMINAL LAW—VERDICT HELD NOT CONTRARY TO INSTRUCTIONS.— Where the jury, after deliberating several hours, returned into the court and the foreman stated that they had not agreed upon a verdict and wanted to know in case defendant was not guilty by reason of insanity would he be put free, and the court stated that was within the discretion of the court, and the jury brought in a verdict of guilty, *held*, that the answer of the foreman did not indicate that they had reached a verdict, nor was their verdict influenced by the answer of the court, nor contrary to instructions providing that the jury should not speculate as to the result in case the defendant was found insane.

APPEAL from a judgment of the Superior Court of the County of Yavapai. Joseph S. Jenckes, Judge. Affirmed.

Mr. John A. Ellis, for Appellant.

Mr. W. J. Galbraith, Attorney General, Mr. F. W. Perkins and Mr. George R. Hill, Assistant Attorneys General, and Mr. John L. Sullivan, County Attorney, for the State.

McALISTER, J.—Appellant, Anna Irene Hopkins, was convicted of the crime of throwing a caustic chemical, to wit, carbolic acid, upon the person of one Lucille Gallagher with the intent to injure her flesh and disfigure her body, and sentenced to an indeterminate term of not less than five nor more than fourteen years in the state prison. She has appealed from this judgment and the order denying her a new trial.

Among other defenses, the insanity of appellant at the time the act was committed was interposed, and for the purpose of placing the law of this defense before the jury the court instructed as follows:

"You are instructed that it is not the province of the jury to speculate as to what would be the result in case the defendant is found not guilty by reason of insanity, because it is the duty of the court in such case, if it believes the insanity yet exists, to order a hearing to pass upon that question, and the full responsibility with respect to that is upon the court.

"I instruct you that the law recognizes that insanity is a disease of the mind, and that, as distinguished from earlier times, it is the policy of the law that diseases of the mind should be treated in hospitals for the insane, as distinguished from penal institutions, and in this case, if you believe from the evidence submitted that the defendant at the time of the commission of the act charged was suffering from a

disease of the mind to such an extent that it controlled her will and compelled the commission of the act charged, then, notwithstanding that this act in a sane person would be punished criminally, it will be your duty to find the defendant not guilty by reason of insanity.''

After deliberating several hours, the jury returned into court at 3:10 P. M., all parties being present, and the following proceedings were had:

"The Court: Gentlemen of the jury, have you agreed upon your verdict?

"The Foreman (Mr. Massing): No.

"The Court: Do you desire some further information?

"The Foreman (Mr. Massing): Yes. The information we want is in case the defendant not guilty by reason of insanity, we come to the agreement, would the defendant be put free?

"The Court: Well, that is a matter that will be in the discretion of the court.

"The Foreman: I think that is all we want to know.

"The Court: Very well. You may retire, gentlemen.''

The jury then retired for further consideration of the case, and at 4:30 P. M. of the same day returned a verdict finding the defendant guilty as charged.

Several errors are assigned, but they each raise the only question relied on by appellant, which is that the verdict is contrary to law, in that it does not accord with the foregoing instructions, and in support of this view it is argued that the question asked the court by the foreman of the jury when it came in for further instruction shows conclusively that the jury had agreed that appellant was insane at the time she committed the act charged against her, but that the answer of the court led it to believe that if it returned a verdict of not guilty because of insanity appellant might be allowed to go free; that the jury's conviction that she was insane at the time entitled her to

an acquittal, regardless of whether she would be put free even though insane, and its failure to follow the instructions in this respect and return a verdict in accordance with its conviction was a disregard of its duty.

Appellant cites a number of authorities to show that the jury should have taken the law from the court and followed it, and that its failure to do so was reversible error.   There can be no question but that such was its duty, whether the court correctly or incorrectly instructed it, for this court, in line with the holding of all the courts on the subject, said in *Pacific Gas & Electric Co.* v. *Almanzo*, 22 Ariz. 431, 198 Pac. 457, that—

"The instruction, although erroneous, was the law of the case until reversed, and should have been followed by the jury, even though in doing so a verdict which accorded with its ideas of right could not have been returned.   Under our system of jury trial procedure the judge of the court determines the law of the case and the jury the facts, and to allow the jury to constitute itself the judge of the law as well as the facts would violate this fundamental principle."

To determine, however, whether the jury failed to follow the court's instruction as claimed by appellant, it would be necessary to know first whether it had reached or agreed upon a verdict that defendant was not guilty by reason of insanity when it came into court for further information and also whether its later conviction that she was guilty, with a verdict to that effect, was brought about in a proper way.   It is clear from the statements of the foreman that the jury was considering the proposition of appellant's sanity and perhaps had questioned it seriously, but it will be observed that in reply to the court's query as to whether it had agreed upon a verdict the foreman, speaking for the full jury, answered, "No." He then wanted this further information:

"In case the defendant not guilty by reason of insanity, we come to the agreement, would the defendant be put free?"

This sentence is not complete, yet we think it fairly imports but one thing, and that is this: In case the jury come to the agreement that the defendant is not guilty by reason of insanity, would the defendant be put free? This view is strengthened by the minute entries of the clerk of the court shown by the following:

"Thereupon the court makes inquiry of the jury as to what verdict has been agreed upon, whereupon John Massing, one of the jurors, states to the court in effect and substance that the jury desires to know if, in case said jury returns a verdict finding the defendant not guilty by reason of insanity, whether under such circumstances the defendant would be set free, and the court states to the jury that that matter would be left to the discretion of the court, and it appearing that the jury has not yet definitely decided upon a verdict, the jury again retires in charge of the bailiffs, W. A. Murray and Jack Morrison, for further deliberation."

We think the language of the foreman, fairly interpreted, especially in view of his statement that a verdict had not been agreed on, cannot be given the meaning appellant claims for it. What the jury concluded as to her sanity must be gained from the verdict itself, and the mere fact that the foreman's remarks indicate that the jury was then considering this question seriously does not justify a holding that it had at that time a definite conviction different from that finally reached. But even if it then had the view contended for, the fact that it finally came to the opposite conclusion would not justify this court in saying that the jury had not followed the court's instruction not to speculate as to what the result of an acquittal would be, in reaching its final verdict, because through argument and reasoning jurors often reach

conclusions different from those entertained by them when they first enter the jury-room or even after they have discussed for a while the evidence. And there is nothing in the record showing that it did not reach its verdict in this way.

No error appearing, the judgment is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.